UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| Red Bull GmbH<br><br>    Plaintiff,<br><br>v.<br><br>The Individuals, Business Entities, And Unincorporated Associations Identified on Exhibit 1<br><br>    Defendants | Civil Action No. 4:25-cv-1004 |

### PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Red Bull GmbH asserts its claims against the Defendants in the attached Exhibit 1, and alleges as follows:

### PARTIES

1. Plaintiff Red Bull GmbH is an Austrian multinational private conglomerate company with a principal place of business at Am Brunnen 1, 5330 Fuschl am See, Austria.

2. The currently-known Defendants are comprised of individuals, business entities of unknown makeup, or unincorporated associations, each of whom, on information and belief, likely reside or operate in foreign jurisdictions, or redistribute products from the same or similar sources in those locations, including those identified by name or alias on the attached Exhibit 1 (collectively, "Defendants").

3. Defendants operate through domain names and interactive commercial webstores (the "Infringing Webstores") hosted on various e-commerce platforms, such as Alibaba, AliExpress, Amazon, Bonanza, DHgate, eBay, Etsy, Shein, Temu, Walmart, and Wish (the "Marketplaces").

1

4. Defendants offer their products for sale to consumers in the United States, including this District, and, on information and belief, have sold and continue to sell products (the "Infringing Products") which violate Plaintiff's intellectual property rights to consumers within the United States, including within Texas and the Eastern District of Texas.

5. Through their illegal operations on the Infringing Webstores, Defendants are directly and personally contributing to, inducing, and engaging in the sale of Infringing Products, and on information and belief, are doing so often as partners, co-conspirators, or suppliers.

6. On information and belief, Defendants are an interrelated group working in concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products.

7. Defendants conceal their identities and the full scope of their infringing operations to deter Plaintiff from learning Defendants' true identities and the exact interworking of Defendants' infringing operations. The true identities of many of these Defendants are presently unknown.

## JURISDICTION & VENUE

8. This is an action for trademark infringement and counterfeiting under 15 U.S.C. § 1114, Unfair Competition and False Designation of Origin under 15 U.S.C. §1125(a), and Federal Trademark Dilution under 15 U.S.C. § 1125(c).

9. This Court has subject-matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this is an action arising under the laws of the United States and relating to trademarks.

10. This Court has personal jurisdiction over Defendants because each Defendant has, through one or more fully interactive commercial Internet websites, pursued sales from Texas residents by offering shipping to Texas, *see* Exhibit 2, and, on information and belief, has induced sales of Infringing Products to residents of Texas in violation of Plaintiff's intellectual property rights. As such, personal jurisdiction is proper because each Defendant is committing infringing acts in Texas

and has wrongfully caused Plaintiff substantial injury in the State of Texas.

11. This Court also has personal jurisdiction over Defendants because Plaintiff's claims arise under federal law; the Defendants are, on information and belief, not subject to jurisdiction in any state's courts of general jurisdiction; and exercise of such jurisdiction is consistent with the United States Constitution and laws. Fed. R. Civ. P. 4(k)(2).[1] Personal jurisdiction is thus also proper pursuant to Rule 4(k)(2) because each of the Defendants directs its activities at residents of the United States and the State of Texas.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391. Defendants are entities or individuals subject to personal jurisdiction in this District, and Defendants not residing in the United States may be sued in any judicial district.

### Plaintiff's Intellectual Property & Plaintiff's Products

13. Plaintiff is the owner of all right, title and interest in and to U.S. Registration No. 6285469 for the ALPHATAURI composite mark, U.S. Registration No. 6861431 for the blue and silver design mark, U.S. Registration No. 4561917 for the GIVES YOU WINGS standard character mark, U.S. Registration No. 4578384 for the two bulls and circle design mark, U.S. Registration No. 4797664 for the bull design mark, U.S. Registration No. 5629927 for the RB LEIPZIG composite mark, U.S. Registration No. 3999209 for the RED BULL NEW YORK composite mark, U.S. Registration No. 4647395 for the RED BULL standard character mark, and U.S. Registration No. 3440484 for the VITALIZES BODY AND MIND standard character mark, (collectively, the "Registered Marks"). The Registered Marks are valid, subsisting, unrevoked, and uncancelled, and

---

[1] "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014); *see also J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011) ("submission through contact with and activity directed at a sovereign may justify specific jurisdiction"). Specific jurisdiction only requires a defendant to have "minimum contacts" with the state, rather than the "continuous and systematic" standard for general jurisdiction—the defendant need only purposefully direct its activities at residents of the forum, and the plaintiff's alleged injury must arise out of or relate to the defendant's contacts with the forum. *Dontos v. Vendomation NZ Ltd.*, 582 F. App'x 338, 342 (5th Cir. 2014).

the registration certificates for the Registered Marks constitute prima facie evidence of their validity, and of Plaintiff's exclusive right to use the Registered Marks pursuant to 15 U.S.C. § 1057(b).

14. A genuine and authentic copy of the U.S. federal trademark registration certificates and Trademark Electronic Search System ("TESS") records for the Registered Marks are attached as Exhibit 3.

15. Plaintiff sells its famous beverages, as well as apparel and clothing that are vital to the brand's success and consumer appeal, throughout the world, including within the Eastern District of Texas (collectively, Plaintiff's "Products") under one or more of the Registered Marks. Defendants' sale of Infringing Products in violation of Plaintiff's intellectual property rights is irreparably damaging Plaintiff by undercutting Plaintiff's pricing, and diluting and tarnishing Plaintiff's famous brand.

16. Plaintiff's brands, symbolized by the Registered Marks, are recognized symbols of high-quality and innovative products. As detailed below, Plaintiff has been using the Registered Marks for many years in connection with the advertising and sale of Plaintiff's Products in interstate and foreign commerce, including commerce in the State of Texas and the Eastern District of Texas.

17. The Registered Marks have been widely promoted, both in the United States and throughout the world. Consumers, potential consumers, and other members of the public not only associate Plaintiff's Products with exceptional materials, style, and workmanship, but also recognize that Plaintiff's Products sold in the United States originate exclusively with Plaintiff and/or its affiliates.

18. As of the date of this filing, Plaintiff's Products are sold globally in retail markets and via the world-wide web.

19. Plaintiff maintains quality control standards for all of its Products. Genuine Products are distributed through a worldwide network of distributors and retailers, as well as Plaintiff's primary

website located at www.redbullshop.com ("Website"). The Website features proprietary content, images, trademarks, and designs exclusive to Plaintiff. Attached as Exhibit 4 are representative examples of Plaintiff's offering its Products in connection with the Registered Marks for sale on its Website.

20. The Registered Marks are distinctive, globally recognized symbols of quality that are uniquely associated with Plaintiff, and Products bearing them have generated significant revenue over the years.

21. None of the Registered Marks have ever been assigned or licensed to any of the Defendants in this matter.

22. The Registered Marks are a symbol of Plaintiff's quality, reputation, and goodwill, and have never been abandoned.

23. Further, Plaintiff has expended substantial time, money, and other resources developing, advertising, and otherwise promoting the Products in connection with the Registered Marks.

### Defendants' Infringing Activities

24. Upon information and belief, at all times relevant hereto, Defendants in this action have had full knowledge of Plaintiff's ownership of the famous Registered Marks, including Plaintiff's exclusive right to use and license such intellectual property and the goodwill associated therewith.

25. Plaintiff recently identified the Registered Marks being used without authorization on Infringing Products on the Infringing Webstores. These stores are designed to resemble authorized Internet retail stores.

26. Defendants' use of one or more of the Registered Marks in connection with the advertising, marketing, distribution, offering for sale, and sale of the Infringing Products is likely to cause and has already caused confusion, mistake, and deception among consumers and is irreparably

harming Plaintiff.

27. Defendants have manufactured, imported, distributed, offered for sale, and sold Infringing Products in connection with one or more of the Registered Marks and continue to do so.

28. Defendants, without authorization or license from Plaintiff, knowingly and willfully used and continue to use one or more of the Registered Marks in connection with the advertisement, offer for sale, and sale of the Infringing Products, through, inter alia, the Internet. The Infringing Products are not genuine Plaintiff Products. Plaintiff did not manufacture, inspect, or package the Infringing Products and did not approve the Infringing Products for sale or distribution. Each Infringing Webstore offers shipping to the United States, including Texas, and, on information and belief, each Defendant has sold Infringing Products into the United States, including Texas.

29. Defendants falsely advertise the sale of authentic Plaintiff Products through the Infringing Webstores, while utilizing one or more of the Registered Marks. Defendants' Infringing Webstore listings appear to consumers to be legitimate websites and listings, authorized to sell genuine Plaintiff Products.

30. Defendants also deceive consumers by using one or more of the Registered Marks without authorization within the content, and/or meta tags of the listings on Infringing Webstores in order to appear in search engine results for the Plaintiff Products.

31. Defendants go to great lengths to conceal their true identities and often use multiple fictitious names and addresses to register and operate the Infringing Webstores. Upon information and belief, Defendants regularly create new websites on various platforms using the identities listed in Exhibit 1 as well as other unknown fictitious names and addresses.

32. Defendants' unauthorized use and sale of Infringing Products using one or more of Plaintiff's Registered Marks is irreparably damaging Plaintiff.

33. Upon information and belief, Defendants will continue to register or acquire listings

for the purpose of selling Infringing Products that infringe on the Registered Marks unless preliminarily and permanently enjoined.

34. Plaintiff has no adequate remedy at law.

## COUNT ONE
## TRADEMARK INFRINGEMENT AND COUNTERFEITING
## (15 U.S.C. § 1114)

35. Plaintiff repeats and realleges the foregoing allegations above as if fully set forth here.

36. Plaintiff's Registered Marks and the goodwill of the business associated with them in the United States and throughout the world are of great and incalculable value. The Registered Marks are highly distinctive and have become universally associated in the public mind with Plaintiffs' Products and related services. Consumers associate Plaintiff's Registered Marks with Plaintiff as the source of the very highest quality products.

37. Without Plaintiff's authorization or consent, and having knowledge of Plaintiff's well-known and prior rights in Plaintiff's Registered Marks and the fact that Defendants' Infringing Products are sold using marks which are identical or confusingly similar to Plaintiff's Registered Marks, Defendants have manufactured, distributed, offered for sale, and/or sold the Infringing Products to the consuming public in direct competition with Plaintiff's sale of genuine Plaintiff Products, in or affecting interstate commerce.

38. Defendants' use of copies or approximations of one or more of Plaintiff's Registered Marks in conjunction with Defendants' Infringing Products is likely to cause and is causing confusion, mistake, and deception among the general purchasing public as to the origin of the Infringing Products, and is likely to deceive the public into believing the Infringing Products being sold by Defendants originate from, are associated with, or are otherwise authorized by Plaintiff—all to the damage and detriment of Plaintiff's reputation, goodwill, and sales.

39. Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill, reputation, and sales.

## COUNT TWO
## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. § 1125(a))

40. Plaintiff repeats and realleges the foregoing allegations above as if fully set forth here.

41. The Infringing Products sold and offered for sale by Defendants are of the same nature and type as Plaintiff's Products, and, as such, Defendants' use is likely to cause confusion to the general purchasing public.

42. By misappropriating and using one or more of Plaintiff's Registered Marks, genuine product images, and trade names, Defendants misrepresent and falsely describe to the general public the origin and source of the Infringing Products and create a likelihood of confusion by consumers as to the source of such merchandise.

43. Defendants' unlawful, unauthorized, and unlicensed manufacture, distribution, offer for sale, and/or sale of the Infringing Products creates express and implied misrepresentations that the Infringing Products were created, authorized, or approved by Plaintiff, all to Defendants' profit and damaging to Plaintiff.

44. Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of one or more of Plaintiff's Registered Marks, genuine product images, and trade names in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

45. Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, Plaintiffs will continue to suffer irreparable harm and injury to its goodwill, reputation, and sales.

## COUNT THREE
## FEDERAL TRADEMARK DILUTION
## (15 U.S.C. § 1125(c))

46. Plaintiff repeats and realleges the foregoing allegations above as if fully set forth here.

47. Plaintiff's Registered Marks are distinctive and "famous" within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

48. Plaintiff's Registered Marks became distinctive and famous prior to the Defendants' acts as alleged herein.

49. Defendants' acts as alleged herein have diluted and will, unless enjoined, continue to dilute and are likely to dilute the distinctive quality of Plaintiff's famous Registered Marks.

50. Defendants' acts as alleged herein have tarnished and will, unless enjoined, continue to tarnish, and are likely to tarnish Plaintiff's Registered Marks by undermining and damaging the valuable goodwill associated therewith.

51. Defendants' acts as alleged herein are intentional and willful in violation of Section 43(c)(1) of the Lanham Act, and have already caused Plaintiff irreparable damage and will, unless enjoined, continue to so damage Plaintiff, which has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and in favor of Plaintiff as follows:

1. Declaring that each Defendant's use and display of the Registered Marks and sale of the Infringing Products infringes the Registered Marks;

2. Declaring that each Defendant's conduct was knowing, intentional, and willful;

3. Permanently enjoining each Defendant and each Defendant's successors, affiliates, servants, officers, agents, independent contractors, and employees, and anyone acting in active concert

or participation with or at the behest or direction of any of the foregoing, from:

    a.    using the Registered Marks, or any reproduction, counterfeit, copy, or colorable imitation of the Registered Marks in connection with the distribution, advertising, offer for sale, and/or sale of merchandise that are not genuine Plaintiff Products;

    b.    passing off, inducing, or enabling others to sell or pass off any Infringing Products as genuine products made and/or sold by Plaintiff;

    c.    committing any acts calculated to cause consumers to believe that Defendants' Infringing Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

    d.    further infringing on the Registered Marks and damaging Plaintiff's goodwill;

    e.    competing unfairly with Plaintiff in any manner;

    f.    shipping, delivering, holding for sale, distributing, returning, transferring, or otherwise moving, storing or disposing of in any manner products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and that bear any of the Registered Marks, or any reproductions, counterfeit copies, or colorable imitations thereof;

    g.    using, linking to, transferring, selling, exercising control over, or otherwise owning or operating the Infringing Webstores, listings, or any other domain name that is being used to sell or is the means by which Defendants could continue to sell Infringing Products;

    h.    operating and/or hosting websites at the Infringing Webstores and any other domain names that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the Registered Marks, or any reproduction, counterfeit copy, or colorable imitation thereof that is not a genuine product or not authorized by Plaintiff to be sold in connection with Plaintiff's Registered Marks;

  i.  registering any additional domain names that use or incorporate any of Plaintiff's Registered Marks.

  j.  moving, relocating, or otherwise disposing of any funds currently located in Defendants' online accounts, including, without limitation, from Alibaba, AliExpress, Amazon, Bonanza, DHgate, eBay, Etsy, Shein, Temu, Walmart, Wish, Alipay, PayPal, Stripe, Payoneer, WorldFirst, and Western Union;

  k.  removing, destroying, or otherwise disposing of computer files, electronic files, business records, or documents relating to any of Defendants' webstores, websites, assets, operations, or relating in any way to the reproduction and display of any Registered Marks; and

  l.  engaging in any other activity that infringes on Plaintiff's rights in any manner.

4. Ordering Defendants to, within ten days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner in which Defendants have complied with any and all injunctive relief ordered by this Court;

5. Ordering that Defendants account for, and pay over to Plaintiff any and all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Registered Marks be increased by a sum not exceeding three times the amount thereof as provided by law as provided by 15 U.S.C. § 1117.

6. Ordering that Plaintiff be awarded maximum statutory damages against each Defendant in the amount of $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed, as this Court considers just, and if this Court finds willful use of the counterfeit marks pursuant to 15 U.S.C. § 1117(c)(2); in the alternative, that Plaintiff be awarded maximum statutory damages against each Defendant in the amount of $200,000 per counterfeit mark per type of goods

sold, offered for sale, or distributed, as this Court considers just pursuant to 15 U.S.C. § 1117(c)(1).

7. Finding that this is an exceptional case and awarding Plaintiff its costs, expenses, and reasonable attorneys' fees jointly and severally against the Defendants pursuant to Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116 and 1117, together with prejudgment and post-judgment interest, and;

8. That this Court enter an order pursuant to Fed. R. Civ. P. 65(d)(2)(C) that those in privity with Defendants and those with notice of the injunction, including ecommerce platform providers, such as Alibaba, AliExpress, Amazon, Bonanza, DHgate, eBay, Etsy, Shein, Temu, Walmart, Wish, etc., and payment processors, such as Alipay, PayPal, Stripe, Payoneer, WorldFirst, Western Union, or other bank accounts or payment processors used by the Defendants (each of the foregoing ecommerce platform providers and payment processors, a "Third Party Provider") shall within 3 business days of receipt of the corresponding order:

    a. Take all steps to prevent any Defendant from accessing or withdrawing funds from any accounts through which the Defendants, in the past, currently, or in the future, engage in the use of any of the Registered Marks and advertisement and sale of the Infringing Products, including, but not limited to, any accounts associated with the Defendants listed on the attached Exhibit 1; and

    b. take all necessary steps to prevent any Defendant from accessing or withdrawing funds from any accounts linked to the Defendants, linked to any email addresses used by the Defendants, or linked to any of the Infringing Webstores.

9. That this Court grant Plaintiff such other and further relief as it deems to be just and proper.

Dated: September 12, 2025                    Respectfully submitted,

                                          **Scale LLP**

                                          By: */s/ Charles A. Wallace*
                                          Charles A. Wallace
                                          Texas Bar No. 24110501
                                          James H. Creedon
                                          Texas Bar No. 24092299
                                          5 Cowboys Way, Suite 300
                                          Frisco, Texas 75034
                                          Tel.    415.735.5933
                                          Fax    415.573.0983
                                          cwallace@scalefirm.com
                                          jcreedon@scalefirm.com

                                          ATTORNEYS FOR PLAINTIFF
                                          RED BULL GmbH


<u>**MOTION TO FILE UNDER SEAL**</u>

     I hereby certify that, in accordance with Local Rule CV-5(a)(7), a motion to seal the above document has been filed with this Court.

                                          By: */s/ Charles A. Wallace*
                                              Charles A. Wallace